# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 4, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2241**

Cir. Ct. No. **2019SC40868**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

CHALET AT THE RIVER, LLC,

PLAINTIFF-RESPONDENT,

V.

DEVONZELL HOLLINGSWORTH D/B/A CRAB IT YOUR WAY,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: PEDRO COLON, Judge. *Reversed and cause remanded with directions*.

¶1 BRASH, P.J.[1] Devonzell Hollingsworth d/b/a/ Crab It Your Way ("Hollingsworth") appeals a judgment by the trial court for a writ of restitution of premises leased by Hollingsworth and owned by Chalet at the River, LLC (the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

"Chalet"). The trial court held that Hollingsworth had breached his lease with the Chalet, specifically with regard to a provision that required Hollingsworth to maintain the common area bathrooms.

¶2 After reviewing the record, we conclude that the trial court did not make findings sufficient to demonstrate that it properly exercised its discretion in finding that Hollingsworth had breached the lease. We therefore reverse the judgment for the writ of restitution of the premises, and remand this matter for further proceedings consistent with this opinion.

## BACKGROUND

¶3 In December 2017, Hollingsworth entered into a five-year commercial lease with the Chalet for restaurant space located on West Second Street in Milwaukee. The lease provided for a build-out of the premises, allowing Hollingsworth to make extensive repairs and improvements to the premises before opening his restaurant, Crab It Your Way, in June 2019.

¶4 The Chalet filed the eviction action underlying this appeal in September 2019. It asserted that Hollingsworth had breached the terms of the lease in several ways: by failing to "maintain, clean, repair and stock with appropriate toiletries the first floor common restroom on a daily basis" as required in Articles 5 and 20 of the lease; by failing to maintain "the safety and care of the building" pursuant to Article 7 of the lease, after "on two occasions Hollingsworth failed to keep the gas pilot light lit on the gas stove which resulted in massive gas leaks creating a dangerous environment to which WE Energies had to respond," and further, by failing to "put in place a gas monitoring system" after being informed to do so by the Chalet; and by failing to pay the Chalet's attorney's fees,

2

costs, and expenses incurred by the Chalet as a result of enforcing the lease provisions, pursuant to Article 24 of the lease.

¶5     A hearing on the action was held on November 18, 2019. The maintenance man for the Chalet, Charles Seever, testified as to the state of uncleanliness of the bathrooms on a regular basis over a period of two to three months. He submitted approximately eighty pictures taken during that time frame, showing toilets plugged and overflowing, garbage overflowing, dirty sinks, and empty toilet paper holders. The owner of the Chalet, Bonnie Joseph, testified as well. She also described the state of the bathrooms, and her expectation that they would be cleaned several times a day.

¶6     Additionally, Joseph testified about receiving notices from WE Energies about an "unsafe condition" at the property due to the gas pilot light not being monitored. She stated that the Chalet sent Hollingsworth notice in March 2019 that it was instituting a rule about gas monitoring pursuant to the safety provision, as permitted under Article 7 of the lease.

¶7     The trial court stopped Joseph from testifying regarding the alleged breach relating to Hollingsworth's failure to pay attorney's fees incurred by the Chalet. The court stated that this evidence was related to the damages claim as opposed to the eviction, and would be heard at a subsequent hearing.

¶8     Hollingsworth testified on his own behalf. He stated that he had spent over $400,000 on the build-out of the premises. He tried to present an argument for equitable relief relating to those expenditures, but the trial court deemed this to be a damages issue and did not allow any testimony on that topic.

¶9     Hollingsworth also testified about the bathrooms. He stated that his dishwasher—as part of his regular duties—cleaned the bathrooms every day. However, he noted that there were existing problems with the plumbing in the bathrooms at the time he leased the premises. He further testified that he had to install locking toilet paper dispensers because the rolls were being stolen from the bathrooms. He also stated that there had been problems with "bums … taking baths" in the bathrooms. Additionally, Hollingsworth submitted pictures he had taken of the bathrooms, asserting that at times when the Chalet claimed the bathrooms were a mess, the problem was merely "a piece of paper on the floor."

¶10     With regard to the gas leak notices, they occurred during the build-out of the premises, before the restaurant was open, and the defense asserted that Hollingsworth had taken steps to mitigate the problem. Hollingsworth testified that he normally shut the gas off every night to prevent gas leaks from occurring. He explained that with regard to one of the gas leaks, it was simply a miscommunication with one of his employees, who thought he was shutting the gas off but had actually inadvertently turned it back on. Hollingsworth also testified that he looked into getting a gas monitoring service as requested by the Chalet. He checked with his security alarm service, as well as calling a phone number that Seever had provided, but these companies were not familiar with such a system.

¶11     The trial court issued the writ of restitution of the premises based on the evidence regarding the state of the bathrooms, and the fact that the lease required Hollingsworth to maintain them. The court did not make any findings with regard to the gas leaks, since it had found that Hollingsworth had breached the lease based on the provision for bathroom maintenance. The court then scheduled a damages hearing for January 2020.

4

¶12   Four days after the hearing—on November 22, 2019—Hollingsworth filed a notice of appeal. That same day, he also filed a motion for reconsideration of the trial court's judgment issuing the writ. The primary basis for his motion was that there was allegedly newly discovered evidence in the form of a recording of Joseph, made by one of Hollingsworth's employees during a confrontation with Joseph, which suggested that Joseph had committed perjury during her testimony about the maintenance of the bathrooms. He also argued that the trial court did not permit him to present a full defense; in particular, that the trial court erred in not allowing him to present evidence regarding his expenses from the build-out of the premises, which he asserted entitled him to equitable relief.

¶13   A hearing on Hollingsworth's motion for reconsideration was scheduled for December 13, 2019. However, the trial court declined to hear the motion on the ground that it had lost jurisdiction when Hollingsworth filed his notice of appeal with this court.[2] This appeal follows.

## DISCUSSION

¶14   On appeal, Hollingsworth seeks a new trial on grounds that he has newly discovered evidence, and that he was not permitted to present a full defense prior to the trial court's ruling that he had breached the lease with the Chalet. "[A] trial court's ruling on a motion for a new trial on the ground of newly discovered

---

[2] A transcript of this hearing was not included in the record; instead, this information was obtained from a CCAP entry for this case, from which we take judicial notice. *See Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5, n.1, 346 Wis. 2d 635, 829 N.W.2d 522; WIS. STAT. § 902.01. CCAP is an acronym for Wisconsin's Consolidated Court Automation Programs, and its website contains information entered by court staff.

5

evidence or in the interests of justice generally is highly discretionary[.]" *Mikaelian v. Woyak*, 121 Wis. 2d 581, 586, 360 N.W.2d 706 (Ct. App. 1984). We will uphold the trial court's discretionary decision if it "has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Hefty v. Strickhouser*, 2008 WI 96, ¶28, 312 Wis. 2d 530, 752 N.W.2d 820 (citation omitted).

¶15 Here, the trial court did not rule on Hollingsworth's motion for reconsideration. Rather, it determined that it did not have jurisdiction to hear the motion due to the fact that Hollingsworth had also filed a notice of appeal with this court. However, WIS. STAT. § 808.075(1) provides just the opposite: "[i]n any case, whether or not an appeal is pending, the [trial] court may act under … [WIS. STAT. §] 805.17(3)," which allows parties to file reconsideration motions within twenty days of the entry of a judgment. Thus, the trial court clearly erred in its determination that it was unable to hear Hollingsworth's motion for reconsideration. The result is that we are left to review his claims based on the record before us, without the benefit of any further findings by the trial court regarding these claims.

¶16 Hollingsworth's first claim is that he has newly discovered evidence material to the case: a recording of Joseph acknowledging to an employee of Hollingsworth that cleaning the bathrooms once a day in the morning "won't do," and "that the bathrooms must be cleaned and maintained at all times." Hollingsworth asserts that this suggests Joseph committed perjury because her testimony indicated that the bathrooms were not being cleaned on a daily basis, and thus Hollingsworth had breached the lease.

6

¶17 To be deemed newly discovered evidence, the recording of Joseph must meet four requirements:

> (a) The evidence has come to the moving party's notice after trial; and
>
> (b) The moving party's failure to discover the evidence earlier did not arise from lack of diligence in seeking to discover it; and
>
> (c) The evidence is material and not cumulative; and
>
> (d) The new evidence would probably change the result.

*See* WIS. STAT. § 805.15(3). All of the requirements must be met. ***Ritt v. Dental Care Assocs., S.C.***, 199 Wis. 2d 48, 79, 543 N.W.2d 852 (Ct. App. 1995).

¶18 The Chalet argues that this newly discovered evidence should not be considered by this court because it is not part of the record. Indeed, Hollingsworth did not include an affidavit from the employee who recorded the conversation with Joseph, or a transcript of the recording, with his motion for reconsideration. However, this action was held in small claims court, where proceedings are conducted more "informally[.]" *See* WIS. STAT. § 799.209(1). Presumably, Hollingsworth would have presented this evidence at the hearing on his motion, had the trial court not declined to hear it after erroneously determining it had lost jurisdiction.

¶19 The result of that determination by the trial court is that there are no factual findings in the record regarding the evidence or its compliance with these requirements. This court "does not engage in fact-finding," *see* ***Lange v. LIRC***, 215 Wis. 2d 561, 572, 573 N.W.2d 856 (Ct. App. 1997), and we are therefore unable to determine the veracity of Hollingsworth's claim.

¶20    Hollingsworth's other argument for a new trial is that he was not allowed to present a complete defense. Specifically, he asserts that he should have been permitted to present evidence of unjust enrichment relating to the investment he made in the build-out of the premises. However, "[t]he doctrine of unjust enrichment does not apply where the parties have entered into a contract." ***Continental Cas. Co. v. Wisconsin Patients Comp. Fund***, 164 Wis. 2d 110, 118, 473 N.W.2d 584 (Ct. App. 1991). Thus, as the trial court stated, any arguments relating to Hollingsworth's expenditures would go to the issue of damages.

¶21    That said, we note that the trial court made its determination that the lease had been breached by Hollingsworth based solely on the evidence relating to the maintenance of the bathrooms. According to Article 20 of the lease, Hollingsworth was required to "clean and maintain all first floor common area bathrooms on a *daily basis*[.]" (Emphasis added.)

¶22    Even without considering Hollingsworth's alleged newly discovered evidence, the record clearly indicates a conflict in the meaning of this provision; specifically, whether "daily" means once a day, or more than once a day. Joseph testified that her expectation was that the bathrooms would be cleaned several times a day. Indeed, Seever testified that prior to the execution of the lease with Hollingsworth, the bathrooms were cleaned at least twice a day—once by him, and once by a "cleaning guy" employed by the Chalet.

¶23    In contrast, Hollingsworth testified that his dishwasher "c[a]me in early" to clean the bathrooms—once a day. Furthermore, Hollingsworth asserts that his alleged newly discovered evidence is that Joseph acknowledged that the bathrooms were cleaned on a daily basis—once a day—but that was not sufficient.

¶24 "Contract interpretation generally seeks to give effect to the parties' intentions." *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶25, 348 Wis. 2d 631, 833 N.W.2d 586. Yet, "subjective intent is not the be-all and end-all." *Id.* (citation omitted). Rather, "unambiguous contract language controls contract interpretation." *Id.* (citation omitted). However, a contract provision will be deemed to be ambiguous "if it is fairly susceptible of more than one construction." *Id.*, ¶27 (citation omitted). In that case, the court may use extrinsic evidence to determine the parties' intent. *Id.*

¶25 During the eviction hearing, the trial court stated that it had not reviewed the lease. Furthermore, it made no findings as to the construction of the lease provision with regard to this potential ambiguity in light of the testimony received. Without such an analysis, we are unable to conclude that the trial court examined all of the relevant facts and applied the proper standard of law. *See Hefty*, 312 Wis. 2d 530, ¶28.

¶26 Therefore, the trial court erroneously exercised its discretion in issuing the writ of restitution for the premises. Accordingly, we reverse and remand this matter for a new eviction hearing that includes findings sufficient to support the trial court's decision.

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

9